**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BRYAN C. HAWKINS,**

      **Plaintiff,**

**v.**                                                                                    **Case No. 8:04-cv-2517-T-TBM**

**JO ANNE B. BARNHART,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**

_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits.  For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was 40 years of age at the time of his administrative hearing.  He stands 5',

8 ½" tall and weighed 196 pounds, up from a usual 180 pounds.  Plaintiff has a 12th grade

education.  His past relevant work was as a collector, a sorter operator at a bank, and a

maintenance worker at a golf course.  Plaintiff applied for disability benefits in July 2002,

alleging disability as of April 10, 2002, by reason of a left forearm amputation and phantom

pain, back and left shoulder pain, and knee and ankle pain.  The Plaintiff's application was

denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge

(hereinafter "ALJ").  In essence, Plaintiff claimed that he could no longer work at any job

after suffering severe injuries to his left arm, ankle, and knee as a result of a motor vehicle accident in April 2002.  As a consequence of the accident, Plaintiff's lower left arm was amputated in August 2002, and rods and screws were used to repair his ankle and knee. Plaintiff reported that he was initially in a wheelchair for several months.

According to Plaintiff, he experiences severe and constant phantom pains in his left arm and pain in his back where muscle was removed to help repair his arm.  He also continues to have pain in his ankle and knee even though he had the hardware removed in March 2003.  Plaintiff reported that he takes Neuronton for his nerve pain, and he previously took Oxycontin and Vicodin.  He said that doctors have discussed a surgical procedure on his ankle to try to fuse it to see if that would help with the pain, as well as another surgery on his arm.  Plaintiff testified that he also has problems in his right elbow and wrist, and he has some difficulty talking and chewing due to pain in his jaw.  Plaintiff testified further that he finds it difficult to focus for any length of time due to pain, has difficulty sleeping, suffers from a low energy level, cries often, and gets frustrated because of his condition.  A psychiatrist has recommended pain counseling.

Plaintiff described his daily routine of waking, dressing, and attending physical therapy.  He indicated that he can make some food with the help of his wife, and he can sometimes dress himself depending on the type of clothes and shoes he wears.  He has no difficulty bathing and he can drive.  Plaintiff watches television but is unable to read because he cannot stay focused. After school, he helps his kids with their homework.  He testified to being self-conscious about his arm and generally he avoids going out, but he tries to ride a bike a couple nights a week after dinner.  Plaintiff has tried using a myoelectric prosthesis,

but stated that it was not very useful.  He can write with his right dominant hand.  Plaintiff has

discussed going back to school with vocational rehabilitation, and has indicated that he would

someday like to teach.

In Plaintiff's opinion, he is unable to return to his past work or perform light or

sedentary extertional jobs because of difficulty he experiences with lifting and because sitting

and standing result in too much pain.  Plaintiff acknowledged that his condition improved a

little since the first year after the accident, but he doubts that he could work at any job without

having the ability to lay down.  See Plaintiff's testimony (R. 362-82, 86).

The ALJ also took testimony from William Harvey, a vocational expert (hereinafter

"VE").  Assuming an individual with the functional capacity to lift five to ten pounds with the

dominant right upper extremity only (with no use of the upper left extremity) and who

required a sit or stand option and simple instructions/tasks, the VE testified Plaintiff would be

unable to return to any of his former jobs.  However, the VE identified sedentary, unskilled

jobs such as surveillance systems monitor, charge account clerk, and scale attendant as jobs

that such a person could perform.  Upon questioning by Plaintiff's counsel as to whether

those jobs would allow unscheduled breaks up to half a day in a month's time, the VE

testified that up to one missed day per month is usually tolerated.  See VE's testimony

(R. 382-85).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed adequately by the parties' memoranda and are addressed herein

as necessary.

By his decision of July 22, 2004, the ALJ found that while Plaintiff has severe impairments related to amputation of the left forearm and ankle and knee injuries status post surgery, he nonetheless had the residual functional capacity to perform a limited range of sedentary exertional work.[1]  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 13-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

_____

[1]The ALJ found Plaintiff could lift and carry ten pounds, walk and stand one hour each in an eight-hour workday, sit eight hours in an eight-hour workday, and required a sit/stand option, could not use of his left arm, and could perform only simple job tasks. (R. 20).

4

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate

that she has done so.  While the court reviews the Commissioner's decision with deference to

the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of

Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan,

936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve

conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson,

445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

inferences from the evidence, and those inferences are not to be overturned if they are

supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial

evidence, the court is not to re-weigh the evidence, but is limited to determining whether the

record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233

(11th Cir. 1983).

The scope of review is limited to determining whether the findings of the

Commissioner are supported by substantial evidence and whether the correct legal standards

were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler,

704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

(1)  The Commissioner erred in failing to find that the Plaintiff was entitled, at the very least, to a closed period of disability; and

(2)  The Commissioner erred in failing to find adequately on (sic) all of the Plaintiff's impairments at step two of the sequential evaluation.

Because Plaintiff's second claim warrants remand, it is addressed first.  By this claim, Plaintiff argues, among other things, that the ALJ's consideration of his mental health was inadequate because the ALJ failed to complete a Psychiatric Review Technique Form ("PRTF") or to comply with the analysis as set out in the form.  In response, the Commissioner asserts that an ALJ is not required to complete a PTRF.[2]

As the Commissioner notes, the regulations no longer require an ALJ to complete and append a PRTF to his or her decision.  See 65 Fed. Reg. 50746, 50757-58 (2000) (codified at 20 C.F.R. § 404.1520a(e)(2)).  However, the regulations require an ALJ to employ a "special technique" when assessing a claimant's mental impairment(s).  See 20 C.F.R. § 404.1520a(a).  Under this technique, the ALJ must rate the degree of functional limitation resulting from the claimant's impairment in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  Id. at § 404.1520a(b)-(d).  The ALJ also must document in his or her decision application of this technique, and the ALJ's written decision must :

---

[2]The Commissioner's memorandum is silent with respect to Plaintiff's claim that the ALJ failed to comply with the analysis set forth in the form.

> [i]ncorporate the pertinent findings and conclusions based on
> the technique, . . . show the significant history, including
> examination and laboratory findings, and the functional
> limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s), [and] . . .
> include a specific finding as to the degree of limitation in
> each of the functional areas . . .

Id. at § 404.1520a(e)(2).  The Eleventh Circuit addressed this issue in Moore v. Barnhart, 405

F.3d 1208 (11th Cir. 2005).  There, the Court held that, "where a claimant has presented a

colorable claim of mental impairment, the social security regulations require the ALJ to

complete a PTRF, append it to the decision, *or* incorporate its mode of analysis into his

findings and conclusions.  Failure to do so requires remand."  Id. at 1214.

Here, in support of his claimed mental impairment, Plaintiff proffered a consulting

psychologist's evaluation and his own testimony.  See (R. 351-55, 365, 369-70).  Review of

the same establishes that Plaintiff presented a colorable claim of a mental impairment.  The

administrative record, however, does not contain a PTRF completed by the ALJ or by a

reviewing, state agency psychologist.[3]  Further, the ALJ does not include in his opinion any

discussion of functional mental limitations or demonstrate application of the special technique

mandated by the regulations.  Consequently, because the ALJ failed to analyze or document

Plaintiff's mental condition in the PTRF functional areas, and the record does not permit an

analysis for harmless error, remand is required.  See Moore, 405 F.3d at 1214.

The remaining aspects of this claim require little discussion.  First, I also agree with

Plaintiff that the ALJ's consideration of the consulting psychologist's opinion was less than

adequate.  Notably, the report prepared by this source was the only psychological evidence of

---

[3]The psychological evaluation was performed after Plaintiff's claim was denied
initially and on reconsideration.

record.  While the ALJ acknowledged the diagnosis and treatment recommendation contained therein, (R. 18), he addressed nothing more from this thorough, five-page report.[4]  See (R. 351-55).  Second, despite Plaintiff's urging to the contrary, there was no error at step two of the five-step sequential evaluation process called for by the regulations by the ALJ's failure to credit him with a severe mental impairment.  Here, the decision reflects that the ALJ found in Plaintiff's favor at step two.[5]  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two.").  Third, although the ALJ may have benefitted from obtaining another psychological evaluation, I am unable to conclude that he was required to order one under the circumstances such that would support an independent ground to remand.  Perhaps upon proper consideration of the mental impairment, such additional evaluation may be required, but this should be decided on remand.  Lastly, Plaintiff incorrectly assumes that ALJ limited him to simple instructions and tasks secondary to a mental impairment; the ALJ assessed that limitation because Plaintiff "would likely still have some breakthrough neuropathic pain on occasion that would affect his ability to maintain attention and concentration."  (R. 17).

---

[4]It appears that the ALJ rejected this opinion outright because Plaintiff has not sought mental health treatment, takes no psychotropic medication, and has denied having mental problems.  However, I cannot ascertain the extent to which the ALJ considered this opinion, and, under the circumstances that exist here, his stated reasons may not be supported.

[5]The Commissioner incorrectly states that once an impairment is found to be non-severe, an ALJ does not have to consider that impairment any further in the sequential evaluation.  See 20 C.F.R. § 404.1523.

In light of the rulings above, the court need not reach Plaintiff's first claim.  See

Jackson v. Bowen, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is

required, it may be unnecessary to review other issues raised).  However, in order to avoid

future allegations of error, on remand, Plaintiff's counsel should address with particularity his

claim that at a minimum, Plaintiff is entitled to a closed period of disability.


IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is not supported by substantial evidence or is not in

accordance with the correct legal standards.  The decision is reversed and remanded for

further proceedings before the Commissioner consistent with this Order.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the

matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 24th day of February 2006.


THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


Copies to:
Counsel of Record

9